Good afternoon. Illinois Appellate Court, First District Court is now in session. The Fifth Division, the Honorable Justice Thomas E. Hoffman presiding. Case number 1-2-0-0-5-2-7, Castle Rigg Master Investments versus AbbVie, Inc. All right, who's gonna argue for the appellant? That'll be me, Your Honor. Corbin Rhodes from Labatton-Sucharo on behalf of the appellant, Castle Rigg Master Investments. And who's got the appellee? Andrew Rimey on behalf of AbbVie and Richard Gonzalez. Okay, the time we have allotted for oral argument is 15 minutes for the appellant, 15 minutes for the appellee, five minutes in rebuttal. Now, this is a fairly complicated case and we know the facts. We have some questions, so I wouldn't waste your time regurgitating facts that we don't really need to know, understand the theories. So whenever you're ready, Mr. Appellant, you can go. Thank you, Your Honor. Good morning and may it please the court, excuse me, good afternoon. May it please the court. As I stated, my name is Corbin Rhodes on behalf of the appellant, Castle Rigg Master Investments. Your Honors, the trial court dismissed my client's common law fraud claims because for the first time ever, it found an exception to the well-established elements of fraud in Illinois. It is undisputed that under Illinois law, a plaintiff may plead traditional common law fraud by pleading that it was induced by the fraud to refrain from taking some action, just as if it had been induced to affirmatively take some action. This is often called forbearance reliance. And in the investment context, it's often referred to as a holder claim, meaning the investor was induced to hold the investment rather than to purchase and sell it. Your Honors, even the most casual observer is aware that there are three basic types of investment recommendations that apply to any investment, buy, sell, or hold. These represent the three fundamental decisions that an investor makes and any investor will tell you that a decision to hold is every bit as impactful to your portfolio as a decision to buy or sell. That's because they all answer the same ultimate question, do I want to own this investment in the future? And all three decisions, buy, sell, or hold can be induced by fraudulent statements that then results in damage to the investor. That's exactly what Castle Rigg has alleged here. It held that, excuse me, it alleged that an investment in the target of a proposed merger by AbbVie, a company called Shire, is what Castle Rigg invested in. And a key question surrounding the completion of the merger was the value, and the value of that investment concerned certain tax benefits associated with AbbVie's intention to re-domicile in the UK where Shire was headquartered. I'm not going to recount all the facts.  Council, I have a question for you. Yes, Your Honor. Council, specifically, what is the fraud that you're alleging induced you to hold on to the security, the investment? What is the fraud specifically? Yes, specifically, Your Honor. Is it what Mr. Gonzales said, or is it something else? Yes, Your Honor, it is precisely, it is what Mr. Gonzales said. And there was another accompanying press release on the same day. That's, we're talking about September 29th, 2014. That is the only day in question with respect to Castle Rigg's claims. And there were essentially two types of misrepresentations. One, there was a statement by Mr. Gonzales in a letter that was publicly filed with the SEC and available to all investors. And Mr. Gonzales stated that he was more confident than ever about the combination and the companies, the two companies combining. Now, context is important here, Your Honors, because this was one week after the highly publicized announcement of the Treasury regulations that AbbVie knew the entire market was looking very closely at. So yes, we are alleging that AbbVie's CEO stating that he was more confident than ever at that point in time, one week after the Treasury regulations were released was false and misleading. Similarly, Your Honors, there's a second statement in an accompanying disclosure that was made on the same time at the same day where the company reassured the market that it was still aiming to close the deal by the end of the year. It was said it was still aiming for a fourth quarter close. And what Castle Rigg has alleged is that both of those statements were false and misleading, that in fact, the company was not more confident than ever that the merger would close one week after the Treasury regulations, that it was not in fact still aiming to close the deal by the end of the year. And the way we know that, one of the ways we know that, Your Honors, is that just two weeks later, just two weeks after those statements were made, AbbVie pulled the plug on this deal and cited absolutely nothing other than the Treasury regulations, which had been out for a week and which the company had already analyzed at the time those statements were made by AbbVie on September 29th, 2014. Now I wanna be very clear. There are other statements that are at issue and that are relevant to Castle Rigg's claims because they tell part of the broader story. And there are other investors that have alleged claims against AbbVie and have in fact alleged purchase claims based on earlier statements that were made in the summer. But those are not Castle Rigg's claims. And I think it's important to distinguish between the two because it's easy to blur the line and think that, well, we have a bunch of investors and they're all alleging some fraud against AbbVie for statements relating to this potential merger. But these were distinct statements that were made at different points in time. And so every investor is going to be individually situated with respect to how they made their investment decisions and what specific decisions they made. So it may be that some investors purchased Shire Securities based on the company statements earlier on in the summer. And it may be that some investors held investments at a later time, again, in reliance on the company's statements. But in either situation, your honors, the core facts are the same. The fact of the matter is that we have investors who relied on the company's false and misleading statements. They made investment decisions based on that reliance and they were damaged as a result. And so- You have a, excuse me, you have a two count complaint. The first point I'd count is for fraudulent concealment. They didn't tell you that they were reconsidering the merger based on the government regulation. The second one is the Gonzalez fraud claim. I take it you're telling me that September 29th, 2014 is the critical date for both claims? Yes, your honor. That's correct. At that time, if you read the allegations and the complaint taken together, the nexus of it is that AbbVie had been analyzing the treasury regulations, was already, at the very least, very concerned and had serious doubts about continuing the merger and yet continued to put on a show for the market, for lack of a better term, based on these representations. Okay, you make no allegation that you were defrauded in the purchase of the Shire stocks, do you? Correct. Castle Rigg does not make those allegations. Other investors have, but that's not Castle Rigg. I'm only worried about Castle Rigg. Yes. So you make no allegation that you were defrauded in the purchase and you claim that you were injured when Gonzalez and the other gentlemen made their statements on February 20th or September 29th or in the alternative for fraudulent concealment when they didn't tell you they were examining. Now, what if they hadn't made those fraudulent statements, but rather on September the 29th came out and said, we're reconsidering and we don't think we're going to go through with this? What would have happened to your stock? Your Honor, I think, well, for one thing, I think the bottom line answer to your question is that is a matter for experts to determine. And that's a matter of- Hold on one second. This stuff is publicly traded. Do you mean to tell me that an expert can tell me what the market would have done vis-a-vis how much the market would have fallen if this had been disclosed? In short, yes, Your Honor. Well- What is he using to foretell the future or what would have happened in the past? Sounds to me like he's using a crystal ball. Your Honor, I do not profess to be an expert in such matters, but I am generally familiar with them. And I can say that it is commonplace in securities cases. In fact, almost all securities cases at some point involve experts on either side opining about what the value of the investments should have or would have been absent of fraud. Well, Your Honor, the best case for you is the California small case. But California in small was very, very specific. He said, in this type of case, you've got to plead the manner in which you compute your damages. You've got to tell us if you had known the facts, when you would have sold, how much you would have sold, and what your loss is. In this particular case, you make no such allegations. Your Honor, I held in reliance. Your Honor, I would disagree that that is all that's pled in the complaint. I think if you, for example, compare the complaint in this case to the complaint that was before this court in Dlugac, you'll find that the pleadings are far more particularized here. And we plead not only that the value of the investment did in fact decrease as a result of defendant's fraud and that we relied on it, but we also include the timing of the purchase and sale decisions and the prices at which the stock existed at that time and then later fell to. So there are very particularized- I've got your complaint in front of me. The only thing you say in paragraph 76 of count one is that have the defendants been truthful that on information and belief, Abbey Vi had not evaluated whether to close the share of transaction, government action to reduce taxes. Plaintiff would have held its position or at least would not have done so at the- would not have held their position, would not have done so at the prices that it did sell. Now, market went down when the truth was known 30%. I'm having trouble to understand how you're damaged by the fraud as opposed to being damaged by the truth. Your Honor, I think that's a fair question, but I think that Castle Rigg, just like any other plaintiff is going to have to plead its case. The issues you're describing describe evidentiary hurdles that are better left for experts and better left for discovery. And I completely agree that Castle Rigg will have to show and will have to show different facts than an investor that purchased or sold in reliance on statements. But that doesn't mean that it's impossible and it doesn't mean that the case should be thrown out at the motion to dismiss stage. For example, Your Honor, I'll just pose a hypothetical situation. It certainly could be that you have a price A, let's call it 100, where the stock was trading prior to AbbVie statements based on market speculation. And then let's say you have stock price B where it traded after the deal actually fell. So we'll call that the maximum minimum range. Well, there may very well be an intermediate range where the stock would have traded if AbbVie had simply told the truth and said, we haven't decided to pull the plug, but we also have serious doubts about this investment. The market could have interpreted that information. Some people would have made a decision to get out. Some people would have made a decision to stay in and likely the price would have remained somewhere in the middle. So in fact, if you plead and can ultimately prove that you would have sold and you would have gotten out of the position at that time had AbbVie told the truth, then you still have recoverable damages based on what you could have mitigated before the stock ultimately tanked. You want damages. Go ahead. Sorry. Go ahead, Joy. Your hypothetical brings me to the question. How would you, I don't understand how you can't calculate the damages. If some of your investors would have gotten out and some of them would have stayed in and we don't know where the price of the shares, the stock would have been at a particular time, how would you calculate the damages? I'm having a lot of trouble with that. It sounds so speculative to me. Tell me how you would anticipate calculating the damages. Yes, Your Honor. Again, I think that's a fair question. I think ultimately, again, that's a question that securities economists can and do opine on all the time. And, but what I would say is that you can do studies and studies are frequently done looking at the prices that similarly traded securities and the path that those prices take when certain statements are made. For example, Your Honors, in this case, we had other deals within the same industry that were also involved inversion aspects right around the very same time. And you had other companies that made different statements to the market and were more truthful to the market about what their own internal analysis showed and what they were doing. An economist could certainly compare how the market reacted to that information as compared to how the market reacted to AbbVie's statement and could do a study and could opine from a place of experience and a place of research as to what they believe a range perhaps, it might not be an exact number. I agree with Justice Hoffman, there is no crystal ball here, but that doesn't mean that reasonable experts based on their experience and based on the facts at issue can arrive at a conclusion and present that conclusion to a jury. And then ultimately it's a question of evidence for the jury to weigh, which is no different than any other case. And so while it's fair to question whether this particular set of facts may pose additional evidentiary hurdles or pose additional challenges for plaintiff's experts, it does not provide a reason to dismiss the case at the pleading stage. Well, the small case was quite clear about what it would require in order to plead the cause of action sufficiently from the damage standpoint. I hope you're not contending that your damages are calculated based on your purchase price. No, you're wrong. Yeah. The only conceivable way you could compute damages was if someone could place a value on what the stock would have been the day that they would announce that we're no longer interested in this deal compared to the amount you sold it for. That might be a measure of damages if you could ever establish what the market would have done. But it appears to me that you're almost arguing that you're entitled to damages based on your purchase price, which is an inflated value. No, your honor. To be clear, and in case this was unclear from our papers, we agree with you that the damages would be calculated based on the value at the time the reliance was made. At the time that Castle Rigg made the decision and should have had the ability to make that decision based on accurate and truthful information. It's at that time that the measure of damages should be calculated against what they ultimately felt to when the market became aware that in fact, those representations were false. I mean, part of the problem that has been discussed on these holder claims though is we kind of make that decision to hold through the whole time period. And so for example, today in the answers to questions to Justice Hoffman, you said your action is based on the September 29th statements of assurance that they were going ahead, but there were other statements of assurance. And in your complaint, you say they weren't revealing that the board had not fully evaluated this. So decisions to hold were made at that time. And on the part of Abby, you're saying they weren't fully honest. So that's one part of it. And the other part of it is, how should we be using the price that Abby had agreed or however, the price of the shires in the merger agreement, there was a fixed price in there, right? That they were going to purchase? That's correct, Your Honor. So how does that play into the damages? Again, Your Honor, I wouldn't want to opine on how an expert would take that information into consideration. So I don't want to speculate on that. But again, I don't view this as any different from, well, it is certainly different. The facts are different from a purchase and sale claim, but fundamentally the principles of common law fraud should apply in the same way to an investor who made it the decision to hold in reliance on the company statements. And those statements turned out to be or alleged to be fraudulent. All of these seem to be either evidentiary hurdles or hurdles for an expert to overcome. And I guess one thing I would say is that, if the outcome of this case in the court's decision is that it holds that a higher pleading standard does apply to holder claimants, which to be clear is not our position and has, I don't think ever been held by an Illinois court. But if that were to be the decision, then the outcome here I think would be to ask Castle Rigg to replead with additional facts, not to simply dismiss their case without having their day in court. Well, there's only one case in Illinois that's on point here. And that case went through four different methods of computing damages and said you simply can't do it in this case. Now there's a dissent by Justice Murphy, but the fact of the matter is the one Illinois case that is on point, and I think it's the case that the trial judge relied on, is the one that says you can't establish damages. Now in small, small is probably the best case for you. And in small, they said, there still has to be an enhanced pleading. You have to state how many shares you would have sold, when you would have sold those shares. And there is no such allegation in your complaint. Well, Your Honor, first I wanna just note that, and you're referring to the Dlugac, the Brincat case, which as you correctly say, was the basis for the lower court's decision here. But the majority in Dlugac expressly declined to rule on the issue. There's no question. The majority did not rule on the issue of whether such a cause of action does or does not exist. But the majority did rule on the issue of whether you could establish damages. And so I'm asking you the same question. If you're gonna rely on small, then what you ought to be asking for is this thing gonna go back so that you can plead your way into small. But the fact of the matter is, you don't make any allegations as the manner in which you're going to compute these damages vis-a-vis how many shares I would have sold and when I would have sold them. Counsel, that's the question I asked you that you didn't answer. Because to me, I just don't... I don't understand how you expect to compute damages under the facts that you've pled. And there's nothing in the complaint that suggests to me a methodology or anything like that. So that's the question I asked you a few minutes ago, and Justice Hoffman is asking now, and I really would like you to answer it for me. Absolutely, Your Honor. And I will do my best to answer your question as directly as possible. I will tell you what the complaint does plead. It pleads that exactly how many shares Castle Rigg held. It pleads the prices of the securities at all the relevant times. It pleads that the price decline that was- Wait a minute, wait a minute. It only pleads the price of the securities when you bought them, and you made an allegation that they dropped 30% when the truth came out. You don't plead the price of these stocks at any other point in time. I apologize, Your Honor. I may have overstated it. Again, if the result here is that holder claim plaintiffs should plead the price of the securities at the time that they relied, then I think that that's a very easily thing to remedy in the complaint. And I think that probably would be the result here because really what you're trying to find out is how much would the securities have been worth at the time that the reliance on the misrepresentation was made at the time that the plaintiffs held their investment. Actually, it's the price that the securities would have been at had the truth been known on that day. Yes. That's the point of calculation. Which I will concede is a matter that really only an expert is, I think, qualified to opine on. And so I think for that reason, it's not appropriate for a pleading standard to require plaintiffs to insert the conclusion and results of analysis of experts that frankly require extensive factual investigation and time and money to arrive at a reliable conclusion. So I think I take your point and you're correct. It would not simply be the market price. It would be the market price in the event that the defendant had in fact told the truth to the market. But again, I would submit that that is something that economists do all the time in securities cases. They apply facts and apply experience to various counterfactuals arrive at their best estimate based on their experience or a range of estimates. And then you have experts on either side that present the jury different interpretations of the facts and the jury decides who they believe. And I don't see that it should be any different here. Your honors, if I may briefly touch on the statute of limitations argument, unless you have any additional questions. Again, I just want to quickly recite what's not in dispute here. The statute of limitations for fraud is five years as we all know, and Castle Rigg filed this complaint within five years of the deal breaking. The shorter three-year statute that AbbVie would apply applies only, and this is by the terms of the statute, applies only if claims are brought under the statute or quote, upon or because of any matters for which relief is granted by this section. I noted that in AbbVie's opposition brief, it quotes the upon or because of, but then paraphrases the rest of the section. But the case law is very clear. The rest of that clause is very important and it is in fact the relief itself, which is important. And no one is denying that a holder claim such as the one that Castle Rigg has brought here is not entitled to relief under the Illinois securities laws. Defendants, excuse me, AbbVie's principal case, Trigenza versus Lehman Brothers, is immediately distinguishable because it involved a purchase and sale claim that clearly would have been covered by the Illinois statute so that is simply following the express language of the statute and doesn't require any different result here. It's not a surprising result. But if you look at this court's decision in Carpenter versus Exelon, where the court conducted an in-depth analysis of the common law claims that shareholders have brought and squarely rejected the same position that AbbVie's stating here, the court found that what's paramount there is whether a remedy is available under the statute, not just whether securities were involved. The court stated very clearly, I'll quote briefly from that decision, "'Illinois courts have long recognized "'that it is evident by the very wording of section 13A "'that the remedies under the Illinois Blue Sky Law "'are available only to purchasers of securities. "'Clearly, the plaintiff's claims against Exelon "'do not arise out of their role as purchasers of securities "'and subsection 13A would not provide them any relief.'" The only difference, your honors, between that case and this one is that Carpenter dealt with the common law breach of fiduciary duty claim as opposed to the common law fraud claims here. But that's a distinction without a difference. In both cases, it is undisputed that the statute would not afford the plaintiff relief as a non-purchaser. And therefore, this court has already held that in that circumstance, the three-year statute does not apply. Similarly, your honors, an Illinois federal court has found the same thing. In Wert versus Cohen, the court ruled on this exact question and held that quote, "'Insofar as plaintiff's claims are, as they allege, "'unrelated to the sale of stock, "'but instead or also involve their decision to retain stock, "'their claims are not reliant upon matters "'for which relief is granted by section 13, "'and its three-year statute limitations "'could not possibly apply.'" That case obviously is not binding, but it is instructive because it's the closest we have factually to the case at bar. Unless your honors have any questions, I'll just briefly conclude by asking the court to reverse the ruling of the trial court which held that the appellants have no remedy under the common law of where they were induced to maintain an investment by false and misleading statements and brought those claims within the five-year period prescribed for such common law claims. Thank you, your honors. Thank you, counsel. Your honors, I think Justice Hoffman may have dropped. I'm prepared to proceed, but I just want to make sure that we're not having any technical difficulties. I'm sorry, Justice- Just wait a moment, please. I'm going to check. So my screen will be dark for a moment. One second, please. I'm trying to reestablish Justice Hoffman. Hold on for a second, gentlemen, please. Thank you. Thank you. All right, Justice Cunningham and Justice Rochford, I put the attorneys in the waiting room while we try to reestablish Justice Hoffman. Okay, great. Thank you. Thank you. Okay, all right. I have my phone next to the computer, Judge, so you'll still be able to hear it from my phone. All right. Okay, Judge. All right, Judge Cunningham? Yes. All right, can you hear me, Judge Rochford? Judge Rochford? Okay, Justice Hoffman is having connection issues, so I have him on speakerphone in my office. I put the attorneys in the waiting room until we resolve it, but he's having connection issues, so he's just gonna listen from the phone. Okay. Okay, he's just gonna listen from here. All right, I'm going to admit the attorneys back. Okay, I will just ask Justice Hoffman if he wants Justice Rochford or myself to chair the hearing, or is he gonna continue to do it? Chair the hearing. The lawyers probably have three or four minutes before you have a lawyer. Yeah, Justice Cunningham, you can proceed, he said. Okay. Okay. Is he gonna ask questions, Tyler? Are you gonna ask questions, Justice Hoffman, or are you just gonna listen? Probably not, I'm gonna listen right now. He's just gonna listen. Okay. Okay, and it'll be available tomorrow on the website if he needs it further. Okay. Okay, all right, I'm gonna admit the attorneys back, Justice Cunningham. I'm gonna try and reconnect. Thank you. Okay, all right, Judge. If I see you reconnect, I'll let you back in. Okay, thank you. Okay. All right, gentlemen, you're back. All right, Justice Cunningham, you can proceed. Okay, I only have one lawyer here. Where's the other? Your Honor, Andrew Rimey on behalf of AbbVie. Oh, yeah, there he is. Good afternoon again, gentlemen. Sorry for the interruption. Technology's great, except when it doesn't work. So we know how that goes. So let's just try to do the best we can. Please go ahead, counsel. State your name for the record. All of this is being recorded, so please state your name. And you do have your full 15 minutes, so please go ahead. Thank you. Good afternoon, and may it please the court. My name is Andrew Rimey, and I represent Appalese, AbbVie, and Richard Gonzalez. I wanna start with Justice Hoffman's question about the small case, and the requirement in small that a plaintiff must plead how many shares would it would have sold, when it would have sold those shares. And that question in small related specifically to the reliance element. That question is also obviously a crucial question for damages, and that's where I wanna start on damages, because the small court didn't grapple with the fundamental question on that element. And Cassarig's damages case presents a legally fatal paradox. On the one hand, it alleges that it was harmed by AbbVie's alleged fraud. But on the other hand, Cassarig could never have realized a profit from the high stock price it seeks in this case without AbbVie's alleged fraud. And Cassarig in its complaint, its briefing, and Mr. Rhodes could not explain how it's possible that Cassarig could have avoided a stock loss if AbbVie had disclosed the alleged truth any earlier. In fact, at paragraph 54 of Cassarig's complaint, it explains very clearly that Shire's stock price declined, not because of fraud, but because the market learned of the alleged truth. Well, counsel, I think your opponent has conceded that his damages has to be calculated on what the price of the stock would have been on September, whatever it is, 28th or 29th, if the truth had been announced, compared to the stock, the price that he sold it at after the 30% drop. I think that's what he's conceded that I believe is his measure of damages, not from the inflated price. Your Honor, that is true. And that damages theory also is in Cassarig's reply brief of pages 17 and 18. That damages theory is not pleaded in the complaint. At paragraph 66, Cassarig seeks, quote, the total decline of Shire's stock price. Moreover, Justice Hoffman, that damages theory does not work here under the facts that are pled in the complaint because Cassarig- Well, counsel, wouldn't this be, as your opponent pointed out, the remedy would be to allow him to amend his complaint, wouldn't it? Your Honor, it's impossible for a holder claim plaintiff like Cassarig to plead cognizable damage. And it's especially true for Cassarig because they're not seeking damages for trading at the stock and the damages theory that Justice Hoffman just articulated works only if it was. This would then look like a more traditional stock drop case based on alleged corporate malfeasance. The argument would be that AbbVie having revealed itself- Why not allow counsel? I think it brings us back to the same question, which your opponent says, why not allow me to amend my complaint and plead those facts? They're saying, I can't plead them, but nobody's given me an opportunity by allowing me to amend my complaint. What about that? There's no facts that they could plead to establish cognizable damage. And Justice Cunningham, I think it makes sense to look closely at what exactly they were trading and what they're seeking damages from. They were trading another company stock, Shire. And there's no allegation in this complaint that Shire engaged in any fraud. Shire is not a party to this case. It's an innocent third-party bystander. There's no fact pleaded in the complaint. And Mr. Rhodes does not explain anything in the briefing that would allow us to infer that AbbVie's fraud in any way impacted Shire's stock more so than just the broken merger, the disclosure of the truth. Again, Shire is not accused of being engaged in any fraud in this case. Furthermore, Your Honor, they fundamentally cannot replete here because they did not buy or sell Shire's stock at any price other than fair market value. And the Dublatch majority was clear that this fact was dispositive to them in that case. And Mr. Rhodes has not been able to distinguish his damages theory that's pleaded in the complaint from the damages theory articulated several times and in several different ways in the Dublatch court. Your Honors, Mr. Rhodes simply cannot explain, no matter how he repletes and adds facts, he simply cannot explain how it could possibly be that he's entitled to the proceeds of a fraud when Castle Rigg does not allege that it bought or sold the object of that fraud, Shire's stock, for anything other than fair market value. And Your Honors, and this came up in your questions to Mr. Rhodes, the damages theory, if we assume that Mr. Rhodes could plead facts that somehow AbbVie's fraud impacted Shire's stock more so than just breaking the merger, that somehow that fraud was priced into the stock, if we assume that's even possible, it would be a matter of rank speculation to prove it. It's a damages theory that's based on a counterfactual that's built from layers of unsupported assumptions. What should have AbbVie said, and when should it have said it? What would an unnamed Castle Rigg trader or traders have done both in terms of- Can you still hear me? Yes, Justice. Okay. The second assumption would be, what would the unnamed trader or traders at Castle Rigg have done if AbbVie had timely disclosed the truth or the alleged truth? Both, and that question is important, both in terms of the volume of stock trades and the timing of stock trades. This is a large volume of stock, and you can't simply go into the market and dump $30 million worth of stock. So we need to know how that selling process would have occurred if AbbVie had timely disclosed the alleged truth. Well, that's small. That's what small says. They have to plead when they would have sold, how many they would have sold. I mean, small recognize the cause of action, but on the reliance issue said, you've got to plead it. It occurs to me, it also applies to the damage issue. But the fact of the matter is that's amendable. You're making an argument and saying no amendment at all will work because the damages are totally speculative. They can't prove them, I think is what you're saying. Yes, Justice Hoffman. But I'm also making the point that in small, the shareholders were trading the stock of the defendant. Here, we're one step removed from that. But he makes the allegation in the complaint. The only reason why they bought the Shire stock was because of the agreement between AbbVie and Shire that they were going to do this inversion and it was all going to be beneficial. And if the stock of the merge company goes up, so they bought it. So, I mean, AbbVie isn't totally out of the picture of their purchase. They're part of the picture. They're part of the picture if this was a purchaser claim. But since this is a holder claim, that information is irrelevant to Castle Riggs damages claim. And again, your honors, this turns on- But they're saying in their complaint that AbbVie knew that these holders such as Castle Riggs were holding the stock because they were hoping to take advantage of this merger and the increase in the price. I think that's a little different than just saying that it wasn't our stock. The merger became more profitable for AbbVie if these people held onto their stock and the merger went through. Isn't that correct? They allege in their complaint that Shire shareholders were more likely to support the merger if the shareholders included merger arbitrage wars like Castle Riggs. Right. Your honor- So, wasn't the success of the merger dependent on Castle Riggs staying the course? The stock price was high because the market perceived that AbbVie had a willingness to close the deal. And the Shire stock was trading closer to the price at which AbbVie was willing to pay for it. But there's no allegation that the price that Shire's stock went down to after the alleged truth was disclosed was somehow less than fair market value. The merger was off. There was no counterparty willing to pay a high share price for Shire's shares because- Well, that was my point when I asked him the question. He says the stock went down 30% when the truth was known. Now, if it's your contention, well, if the truth had been known on September, whatever the date is, it also would have gone down 30%. Then the answer to that question is he has no damages. But I think what his argument is, is we can prove, or we think we can prove that the stock wouldn't have gone down that far if they had told the truth. So, I wouldn't have sold it at 30%, whatever it is lost that I sustained, I think. Your honor, that's- I mean, understand this complaint, to be kind is pro-lix. And the problem is it's hard to figure out what a lot of these theories are, but go ahead. Your honor, I would direct the court to paragraph 54 of Cassel-Rigg's complaint. It's very clear in that paragraph that Cassel-Rigg is alleging that the Shire stock price dropped because the truth was disclosed, the alleged truth was disclosed to the market. And I have to go back to my first point on this. Mr. Rhodes's theory, the damages theory, Justice Hoffman, that you just articulated, only works if Cassel-Rigg was trading Abdi's stock, the alleged fraudster's stock. There's no reason to believe, there's no fact even in the complaint that allows us to infer that it was, that Abdi's fraud impacted Shire's stock above and in addition to the break of the merger and the disclosure of the truth. Your honors, I want to turn to the reliance question briefly and putting aside for the moment whether forbearance in a securities case makes sense as an acceptable form of reliance. The entire Dublatch panel, including Justice Murphy, who wrote separately, agree that a holder claim plaintiff must allege with particularity actions that establish that that plaintiff relied on the alleged fraud. Cassel-Rigg's reliance allegation in this complaint is singular. It is this, some unnamed stock trader at Cassel-Rigg would have sold Shire stock had he or she known the alleged truth. Your honors, that is a conclusion, not an allegation built on particular tweeted facts. I have a question. Let me, along those lines, you're asserting that Dublatch says that Illinois does not recognize holder claims. I don't think that's exactly what it said. It certainly said that those facts didn't plead a holder claim. But what remedies does an investor have if they are fraudulently induced into holding onto a stock or are they just out of luck? They would have, the remedy here would be a derivative claim. And actually this brings us back to Mr. Rhodes's damages theory he's articulated here today. He's saying that Shire's stock was somehow devalued because of AbbVie's fraud over and above the breaking of the merger. If that's true, then that is a harm suffered by all Shire shareholders in proportion to their holdings of Shire. That's a claim that belongs to the corporation. It's Shire's responsibility. If it was defrauded by AbbVie and its corporation is now less valuable because of what AbbVie said in September of 2014, then Castle Riggs remedy is to go through the derivative process to ask the board to enforce its rights against AbbVie. And of course that did not happen here because Shire had protected itself at the beginning of this transaction. It negotiated a break fee. And it said that if AbbVie were to walk away from this merger before it closed, then AbbVie no questions asked had to pay a $1.6 billion break fee. That's what happened here. And Castle Riggs now suing as a holder is seeking a double recovery. It's seeking to benefit from the value that that $1.6 billion created for Shire. And it's seeking to personally gain from an inflated stock price. As it claims, an artificially inflated stock price. Your Honor, there are other remedies too. And this is explained by Justice Eastbrook in the Anderson case from the Seventh Circuit. Illinois has a criminal code that regulates corporate fraud. There are civil remedies for the state. There are purchaser claims. Shareholders who bought in reliance on this alleged fraud can bring a claim. And in fact, they have. Those claimants are still at the trial court going through discovery. Your Honors, on the question of forbearance, I think it's no accident that the Duglatch Court and the First District and other cases involving securities fraud has left out forbearance in its recitation of the elements of fraud. As the blue chip stamps Supreme Court decision explained, if forbearance is a proper form of reliance in a case about publicly traded securities and publicly disseminated fraud, then it would be impossible, aside from the plaintiff's self-serving testimony, to distinguish the plaintiff from the general investing public who suffered the same kind of stock loss as the plaintiff, but did not read an SEC filing on that day or rely on. An unspoken, unrecorded decision of some unnamed trader or traders to do nothing cannot be enough to establish reliance in a securities case like this. Again, we're in the publicly traded securities context, and we're talking about alleged fraud that was disseminated out to the entire market, not to Castle Rigg directly. Finally, Your Honors, to briefly touch on the statute of limitations argument. Castle Rigg waited five years to bring- Councilor? Yes. Annapolis argument is essentially a rebuttal argument. Your opponent did not argue the statute of limitations. I don't know that it's really fair game for you to argue it. Oh, I'm sorry, Justice Hoffman. I think you dropped off when he discussed- Oh, if he did argue when I dropped off, go ahead. Go ahead. Yes, Your Honor. So just to be clear, Castle Rigg waited five years to bring this lawsuit. There's no tolling or discovery question in this case. Castle Rigg was unquestionably on notice that it had claims in October of 2014 when the merger was publicly disclosed as broken. What Castle Rigg is attempting to do here is what this court warned about in the Tregenza case, an opportunistic use of securities laws. Castle Rigg is seeking to exploit what it sees as a gap in the securities laws limitations period, manufacturing a new tort liability, the holder claim, to get itself an even longer limitations period than what would otherwise apply to a securities purchase. If I may interrupt, though, counsel, can you tell me why we should not follow our decision in Carpenter here? Your Honor, because if the court decides that holder claims exist in Illinois and have been cognizantly pled in this case, then they should not get special treatment under the securities laws. They should have the same statute of limitations as a purchaser claim, the other claimants that are still in the trial court. Unless the court has any other questions, I will conclude here. Nothing, thank you. Rebuttal? You're muted, there you go. Thank you, Your Honors. A few points in rebuttal. First, I want to address this overall theme that it is impossible for any plaintiff to ever plead, excuse me, ever prove a holder claim, and therefore they should simply not be recognized and even permitted to plead them. It is not an impossible thing to prove. And I would ask, if it is impossible, then why have at least six states recognized holder claims even after the Supreme Court, the United States Supreme Court decision in Blue Chip Stamps? You know, that much- Can I ask you a question on that issue? Yes. Is there any case anywhere in the country where a holder claim was recognized and the fraud was committed by someone other than the company whose stock was being traded? I'm not aware of one, Your Honor. Let me ask you, you know, I'm not a real smart guy. I reduce things to simple issues. If John Jones wanted to sell his house to Pete Smith and I will come along and say, you know, John Jones's house is worth a million dollars and he relies on my statement. Pays a million dollars for a house that's worth 100,000. Is there a lawsuit against me for fraud? Your Honor, I would submit that if the elements of the traditional elements of common law fraud can be met, then the answer is yes. And those elements are a misrepresentation made with Sienter, relied upon by the plaintiff, which caused them damage. And really you've got- I can be a total stranger to this transaction and there's fraud. What's my duty? Well, Your Honor, I think Your Honor, Regis has an interesting question under, you know, certain hypotheticals about whether or not there's some kind of privity, but Abbey hasn't made that claim here. Abbey hasn't argued that we have no cause of action for fraud simply because, other than their derivative claim, I suppose could be viewed as such. Although they never argued that below. That was a completely novel argument they raised here. And as far as that argument goes- As an employee, he has a right to argue anything before us to cause an affirmance of the judgment below. Yes. Your Honor, that's absolutely true. So I'll address that point. Regardless of what contractual claims Abbey, excuse me, Shire may or may not have had against Abbey, that doesn't change whether or not an investor has a fraud claim directly against the person who made the misrepresentation. My clients were injured. It's not simply a matter of whether or not Shire got the contractual amount of money back. It's the fact that my client and other investors relied on Abbey's statements to the market, which were publicly filed with the SEC, and were entitled to trust the reliability and the accuracy of those statements. Your Honor, I want to just touch a few points because I don't have a lot more time. But as to this fair market value question, again, as I briefly stated earlier, it's not a binary question whether or not Castle Rigg would have maintained 100% of its investment. And also, I think that counsel misstated what our theory is. It's not a lost profits theory. It's that had Abbey told the truth to the market, that investors would have been able to make the informed decision based on accurate information about whether or not they wanted to continue with the investment, knowing that it's subject to this higher scrutiny and might not go through or exit the investment. And that's something, again, that every investor is going to have to ultimately prove. And I disagree that it is impossible to prove what would have happened in that scenario. We can take the testimony of witnesses and ask them. We can look at their contemporaneous documents and see what did their investment memo show? What did their email show? We can look at their history and pattern of trading in similar situations. So it's just, it may be perhaps more difficult. It may be certainly be different than what another purchaser or sale investor might have to show. But I don't think that it's an impossible task and it's not a reason why a holder investor should never have their day in court. And that's all we're asking here. Unless your honors have further questions, I yield my time. Nothing further. Gentlemen, thank you. Matter will be taken under advisement and a decision will be issued in due course. Thank you.